[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The defendants (hereinafter "Griffiths"), husband and wife, are the makers of a promissory note in the amount of $90,000.00 for a loan by Whitney Bank Trust (hereinafter "Whitney Bank"). The note was a seized asset by the Federal Deposit Insurance Corporation (hereinafter "FDIC") on April 10, 1991. Ronald Cerreta, an officer of Whitney Bank testified about the copy of the note in the Bank's credit file in the amount of $90,000.00. Demand for payment was made February 6, 1991.
The FDIC accepted the receivership on April 12, 1991.
The credit file of the Whitney Bank was copied by FDIC. FDIC creates its own file (Plaintiff's Exh. A). The debt owed by Griffiths was sold to the plaintiff Sarasota Inc. (hereinafter "Sarasota"). Sarasota purchased other assets along with the $90,000.00 note (see Plaintiff's Exh. N.) The note of Griffiths was assigned to Sarasota (see Plaintiff's Exh. P.) There were no transfers of the note to any other entity than to Sarasota.
Sarasota is the assignee of the FDIC-Receiver.
Congress has provided in 12 U.S.C. § 1820 (f) a special rule with respect to records of the FDIC.
 "The Corporation [the FDIC] may cause any and all records, papers, or documents kept by it or in its possession or custody to be photographed or microphotographed or otherwise reproduced upon film, which photographic firm shall comply with the minimum standards of quality approved for permanent photographic records by the National Institute of Standards and Technology. Such photographs, microphotographs, or photographic film or copies thereof shall be deemed to be an original record for all purposes, including introduction in evidence in all State and Federal courts or administrative agencies and shall be admissible to prove any act, transaction, occurrence, or event therein recorded. Such photographs, microphotographs, or reproduction shall be CT Page 7393 preserved in such manner as the Board of Directors of the Corporation shall prescribe and the original records, papers, or documents may be destroyed or otherwise disposed of as the Board may direct."
Plaintiff argues correctly that once the plaintiff introduces the records of the FDIC-Receiver they are self-proving for the originals. The existence of the note therefore has been established by the copy contained within the FDIC file. An officer in charge of the file testified it was created from the credit file of the Bank. Further, any danger of the original note becoming the property of another has been removed by the testimony of the FDIC-Receiver.
The Griffiths or the credit file of the Bank at no time show that the note was transferred or satisfied. The Griffiths failed to establish payment of the obligation or other disposition of the note although pled as a special defense.
Contrary to the argument of the defendants, Griffiths, that since the original note is missing, it cannot be enforced, is inapplicable. This court finds under § 42a-3-309,[1] that the evidence produced at trial permits recovery.
Sarasota was provided with an affidavit of the missing note (Plaintiff's Exh. P.) on December 13, 1993 by the FDIC. Affidavits regarding missing notes are not prepared until the sale of the note takes place.
Plaintiffs argued that "[s]everal federal Court of Appeals decisions have specifically held that the receiver for a failed financial institution may enforce rights to lost or missing instruments." RTC v. Love, 36 F.3d 972, 974-75 (10th Cir. 1994);FDIC v. Selaiden Builders, Inc., 973 F.2d 1249, 1254 (5th Cir. 1992); RTC v. Camp, 965 F.2d 25, 29 (5th Cir. 1992). State commercial law is preempted by the federal doctrine enunciated in the D'Oench case. FDIC v. Plato, 981 F.2d 852, 857 (5th Cir. 1993).
Such courts have also held that as a matter of federal law an asset purchaser from the FDIC-Receiver is entitled to "stand in the shoes" of the FDIC-Receiver with respect to its rights under federal law to recover on obligations sold to it by the FDIC-Receiver, such as the longer statute of limitations established by 12 U.S.C. § 1821 (d)(14). Cadle Co. v. 1007 Joint Venture,
CT Page 739482 F.3d 102, 105 (5th Cir. 1996); Davidson v. FDIC, 44 F.3d 246
(5th Cir. 1995); FDIC v. Bledsoe, 989 F.2d 805, 811 (5th Cir. 1993). As the court stated in Bledsoe, the purpose of this rule is to facilitate the disposition of failed institutions' assets, quoting from Fall v. Keasler, 1991 WL 340182 (N.D. Cal., Dec. 18, 1991):
 To hold that assignees are relegated to the state statutes of limitations would serve only to shrink the private market for assets of failed banks. It would require the FDIC to hold onto and prosecute all notes for which the state statute of limitations had expired because such obligations would be worthless to anyone else. This runs contrary to the policy of allowing the FDIC to rid the federal system of failed bank assets.
The FDIC could enforce the missing note and accordingly Sarasota, an assignee, has the same rights. The FDIC-Receiver stood in the shoes of the Whitney Bank. The debt existed on the books of Whitney Bank before the receivership. Before the receivership Griffiths had discussed arrangement to pay the debt as evidenced by the copy of the note in the Credit File. No payments were made by Griffiths on the books and records of the Bank. When FDIC-Receiver sold the assets to Sarasota Inc. the original note was missing without explanation. The court concludes that the note was lost or misplaced. There is no evidence that it was sold or transferred by Whitney Bank. There had been no demand made by any third party for payment.
The evidence at trial failed to produce any support for the asserted special defense that the note was cancelled by a Whitney Bank officer.
The court finds that the principal balance due on the note is $90,000.00 plus interest in the amount of $60,592.53. (See Plaintiff's Exh. U.)
At the time of trial plaintiff filed an affidavit re attorney's fees and costs as provided for in the note. The court has examined the affidavit which was not objected to by the defendant. An attorney's fee of $12,390.00 is approved and costs of $782.54.
Accordingly, judgment may enter in favor of the plaintiff in the amount of $163,765.07. CT Page 7395
Frank S. Meadow, J.T.R.