25 P.3d 807

## GE CAPITAL HAWAI'I, INC., Plaintiff–Appellee,

v.

Lynette L. YONENAKA and Lynette L. Yonenaka, Trustee of the Lynette L. Yonenaka Trust, anunrecorded Semi–Revocable Living Trust dated December 4, 1991, Defendants–Appellants;

and

Christine M.S. Shin; Glendale Federal Bank, F.S.B.; John Does 1–50; Jane Does 1–50; Doe Partnerships 1–50; Doe Corporations 1–50; Doe Entities 1–50; and Doe Governmental Units 1–50, Defendants.

No. 21782.

Intermediate Court of Appeals of Hawai'i.

May 22, 2001.

**34**

Gary Victor Dubin, Honolulu, for Defendant–Appellant, on the briefs.

1. District Family Court Judge John Charles

Allen I. Marutani, Honolulu, for Plaintiff–Appellee, on the briefs.

BURNS, C.J., WATANABE and FOLEY, JJ.

Opinion of the court by BURNS, C.J.

Defendants–Appellants Lynette L. Yonenaka, individually (Yonenaka), and as Trustee of the Lynette L. Yonenaka Trust, an unrecorded Semi–Revocable Living Trust dated December 4, 1991 (Trustee Yonenaka), appeals the circuit court's [1] July 10, 1998(1) Findings of Fact; Conclusions of Law; Order Granting Plaintiff's Motion for Summary Judgment and for Interlocutory Decree of Foreclosure Against All Defendants; and (2) Judgment, which states, in relevant part, as follows:

> [P]ursuant to Findings of Fact; Conclusions of Law; Order Granting Plaintiff's Motion for Summary Judgment and for Interlocutory Decree of Foreclosure Against All Defendants; ... and the Court's determination that there is no just reason for delay under Rule 54(b), Hawaii Rules of Civil Procedure, and the express direction for the entry of this Judgment,
>
> IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that Judgment is entered pursuant to Rule 54(b), H.R.C.P., in favor of Plaintiff and against all Defendants.

We vacate and remand for further proceedings consistent with the law and this opinion.

## BACKGROUND

On August 3, 1994, Yonenaka, Trustee Yonenaka, and Christine Myung Suk Shin (Christine) borrowed $175,000 from GECC Financial Corporation, predecessor of Plaintiff Appellee GE Capital Hawaii, Inc. (GECH), and executed a Promissory Note (PN1) obligating themselves to repay the borrowed amount, plus interest at the rate of ten percent per annum, on or before August 15, 1996. PN1 was secured by a second mortgage (Second Mortgage) on Trustee Yo-

Bryant, Jr., presided as a circuit court judge.

nenaka's 13,500 square-foot Lot 138 of the Ka'a'awa Beach Lots, Hawai'i.

Yonenaka and Christine also signed as personal guarantors of Trustee Yonenaka's performance of her obligations under the Second Mortgage.

A Loan Modification Agreement dated September 20, 1996, extended the mandatory payoff date of PN1 to August 15, 1998.

On April 1, 1997, GECH filed a complaint against Yonenaka, Trustee Yonenaka, Christine, and the first mortgagee, Glendale Federal Bank, F.S.B. (Glendale FB), for judgment on PN1 and foreclosure of the Second Mortgage.

On April 29, 1997, Yonenaka and Trustee Yonenaka filed a cross-claim against Christine in which they alleged that on August 8, 1994, they had paid $173,993.13 to Creative Industries, Inc. (Creative) in exchange for a Promissory Note (PN2) from Creative, Christine, and Jodi Hyun Suk Shin (Jodi) promising the payment of the borrowed amount, plus interest at the rate of twenty percent per annum, on or before August 8, 1995. Creative endorsed the check to Christine. On June 28, 1995, the payoff date was extended to August 8, 1996. On November 6, 1996, the payoff date was extended to August 8, 1997. PN2 was secured by a mortgage (Mortgage) by Creative of its fifty percent interest in the 0.669–acre parcel of real property at 45-680 'Āpuakea Street, Kane'ohe, Hawai'i, 96744, which is Lot B-4–A-1 of Lot 30 in the Halekou–Waikalua–Kai Homesteads.[2] The cross-claim sought judgment and foreclosure.

On May 9, 1997, Yonenaka and Trustee Yonenaka filed a third-party complaint against Creative, Jodi, and others seeking judgment for the nonpayment of PN2 and for foreclosure of the Mortgage.

On July 1, 1997, GECH filed Plaintiff's Motion for Summary Judgment and for Interlocutory Decree of Foreclosure (July 1, 1997 Motion) seeking to collect PN1 and foreclose the Second Mortgage. GECH supported its motion with the affidavit of Gordon Okumoto (Okumoto) stating, in relevant part, as follows:

1. That he is the Loan Adjustment Specialist of [GECH], the Plaintiff in this case, has reviewed the records and files in [GECH's] possession regarding this matter, which records and files are kept by [GECH] in the ordinary course of business under my custody and control and based on the review has personal knowledge of and is competent to testify as to the matters stated in this Affidavit, and does hereby make this Affidavit in support of [GECH's] motion.

. . . .

3. That on or about August 3, 1994, GECC Financial Corporation, hereinafter referred to as "GECC", made a loan to [Yonenaka], [Trustee Yonenaka], and [Christine], hereinafter collectively referred to as "Borrowers", in the principal sum of $175,000.00, and as evidence of said loan, Borrowers, as Maker, made, executed, and delivered to GECC, as payee, that certain promissory note dated August 3, 1994 in the principal sum of $175,000.00, which promissory note has been kept by the Plaintiff in the ordinary course of business under my custody and control, a true and correct copy of which promissory note is attached hereto and made a part hereof as Exhibit "A", and known to me to be a true and correct copy of said promissory note.

4. That as part of the same transaction and for the purpose of securing the amounts due under the said promissory note (Exhibit "A") [Trustee Yonenaka], as Mortgagor, made, executed, and delivered to GECC, as Mortgagee, that certain mortgage dated August 3, 1994 and recorded in the Bureau of Conveyances, State of Hawaii as Document No. 94–131823, a copy of said mortgage having been kept by the

---

2. There is no indication that usury is an issue in this case. The Mortgage may have been a first mortgage. At the time the loan was executed, Hawai'i Revised Statutes § 478–8 (Supp.1997) stated, in relevant part, as follows:.

 **Exemptions from usury.** . . .

(b) The provisions of this chapter (except for this section and section 478–3) shall not apply to any:

(1) Indebtedness which is secured by a first mortgage lien on real property, and is agreed to or incurred after May 30, 1980[.]

Plaintiff in the ordinary course of business under my custody and control, a true and correct copy of which mortgage is attached hereto and made a part hereof as Exhibit "B" and known to me to be a true and correct copy of said mortgage.

. . . .

6. That [Trustee Yonenaka] is the owner of the subject mortgaged property.

7. That GECC assigned to [GECH] the said promissory note (Exhibit "A") and all amendments thereto, said mortgage (Exhibit "B"), and all loan and related documents thereto, by that certain document identified as Assignment of Instruments dated November 22, 1995 and recorded in the Bureau of Conveyances, State of Hawaii as Document No. 95–165779, a certified copy of which is attached hereto and made a part hereof as Exhibit "D".

8. That the said promissory note (Exhibit "A") was amended on September 20, 1996 by that certain Loan Modification Agreement dated September 20, 1996, which Loan Modification Agreement has been kept by the Plaintiff in the ordinary course of business under my custody and control, a true and correct copy of which Loan Modification Agreement is attached hereto and made a part hereof as Exhibit "C", and known to be a true and correct copy of said Loan Modification Agreement.

9. That contrary to the terms and provisions of said promissory note, as amended, and mortgage, Borrowers have failed, neglected, and refused, and still fail, neglect, and refuse to pay the amounts due thereunder, in accordance with the payment schedule provided thereunder, and that accordingly, [GECH] elected to treat the entire amounts [sic] due thereunder to become immediately due and payable.

10. That Borrowers, jointly and severally, owe Plaintiff, the principal sum of $168,356.93, together with interest accrued to June 27, 1997 in the sum of $11,758.96, together with interest to accrue thereafter at the rate of $46.19 per day until paid,

together with late charges accrued in the sum of $675.60, together with late charges to accrue monthly from July, 1997 at the monthly rate of $84.45 per month, together with advances made in the sum of $250.00, and together with costs, expenses, and attorney's fees heretofore incurred and hereafter to be incurred.

In a response filed on July 25, 1997, Yonenaka and Trustee Yonenaka did not object to Okumoto's affidavit or to the merits of the motion. They merely requested, in relevant part, as follows:

Pursuant to the Court's equitable powers, Yonenaka respectfully requests that in the event the Court grants Plaintiff's Motion for Summary Judgment and Interlocutory Decree of Foreclosure, that the Court refrain from entering a final judgment for a period of sixty (60) to ninety (90) days, to allow [Yonenaka] an opportunity to pursue her claims against [Christine, Jodi, and Creative Industries].

At the August 4, 1997 hearing on the July 1, 1997 Motion, there was no objection to Okumoto's affidavit or to the merits of the motion. Counsel for Yonenaka and Trustee Yonenaka merely repeated their request for "60 or 90 days before entry of final judgment[.]" The circuit court orally granted the motion and noted that entry of final judgment would be delayed for sixty days.

In a document filed on September 29, 1997, Jodi gave notice, in relevant part, "that on September 26, 1997, [she] filed a Voluntary Petition under Chapter 7 of Title 11 United States Code, . . . . Therefore, pursuant to 11 U.S.C. § 362(a), any proceeding against [Jodi] has been stayed." Also, for a period of time, Yonenaka was the debtor in a bankruptcy case that was terminated on March 30, 2001.

On July 10, 1998, the circuit court entered (1) its Findings of Fact; Conclusions of Law; Order Granting Plaintiff's Motion for Summary Judgment and for Interlocutory Decree of Foreclosure Against All Defendants,[3] and

3. The amount determined to be due was "the principal sum of $168,356.93, together with interest accrued to June 27, 1997 in the sum of $11,758.96, together with interest to accrue

thereafter at the rate of $46.19 per day until paid, together with late charges accrued in the sum of $675.60, together with late charges to accrue monthly from July, 1997 at the monthly

(2) its Judgment finalized in accord with the requirements of Hawai'i Rules of Civil Procedure (HRCP) Rule 54(b). *See International Savings & Loan Ass'n, Ltd. v. Woods,* 69 Haw. 11, 731 P.2d 151 (1987).

## RELEVANT BANKRUPTCY CASES

Jodi's Chapter 7 Bankruptcy Case No. 97–03202 commenced on September 26, 1997, she was discharged on January 5, 1998; and the case was closed on August 11, 1998.

Yonenaka's Chapter 13 bankruptcy case commenced on October 8, 1999, was dismissed on August 10, 2000, and the case was closed on December 7, 2000.

Yonenaka's Chapter 11 bankruptcy case commenced on August 14, 2000, was dismissed on March 30, 2001 (with a 180–day bar to file), and was closed on April 10, 2001.

## STANDARD OF REVIEW

■ We review a trial court's grant or denial of summary judgment *de novo* under the same standard applied by the circuit court. *Roxas v. Marcos,* 89 Hawai'i 91, 116, 969 P.2d 1209, 1234 (1998) (citation omitted); *Amfac, Inc. v. Waikiki Beachcomber Investment Co.,* 74 Haw. 85, 104, 839 P.2d 10, 22 (1992) (citation omitted). "[S]ummary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Roxas,* 89 Hawai'i at 116, 969 P.2d at 1234 (citation omitted); *see* HRCP Rule 56(c).

HRCP Rule 56(e) states that

[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if

appropriate, shall be entered against the adverse party.

Thus, in *Mednick v. Davey,* 87 Hawai'i 450, 456–57, 959 P.2d 439, 445–46 (App.1998), this court concluded, in relevant part, that

[i]t is only when the moving party satisfies its initial burden of production that the burden "shift[s] to the non-moving party to respond to the motion for summary judgment and demonstrate specific [material] facts, as opposed to general allegations, that present a genuine issue worthy of trial." ...

. . . .

When a plaintiff's summary judgment motion prima facie justifies a judgment on the plaintiff's claims, the third and final step is to determine (1) whether the opposition has demonstrated the existence of a triable, material factual issue on the plaintiff's claims, or (2) if the opposition has adduced evidence of material facts which demonstrate the existence of affirmative defenses that would defeat the plaintiff's claim, whether the plaintiff has demonstrated conclusively the non-existence of such facts. Counter-affidavits and declarations need not prove the opposition's case; they suffice if they disclose the existence of a triable issue.

(Citations omitted.)

■ In *GECC Financial Corp. v. Jaffarian,* 79 Hawai'i 516, 904 P.2d 530 (App.1995), Judge Acoba's concurring opinion stated, in relevant part, that "[t]he plaintiff should be *obligated* to disprove an affirmative defense in moving for summary judgment when, but only when, the defense produces material in support of an affirmative defense." *Id.* at 526, 904 P.2d at 540 (emphasis in original). On certiorari, the Hawai'i Supreme Court stated, in relevant part, that "we ... adopt Judge Acoba's concurring analysis. Accordingly, we hold that a plaintiff-movant is not required to disprove affirmative defenses asserted by a defendant in order to prevail on a motion for summary judgment." 80 Hawai'i 118, 119, 905 P.2d 624, 625 (1995). (We note

rate of $84.45 per month, together with advances made in the sum of $250.00, and together with costs and attorney's fees heretofore incurred and

hereafter to be incurred, and such other amounts as the Court shall determine at a subsequent hearing[.]"

that the adoption of Judge Acoba's concurring analysis causes the holding not to be true when the defense produces material in support of an affirmative defense.)

## DISCUSSION

### A.

The foreclosure order and judgment in favor of GECH and against Yonenaka, Trustee Yonenaka, and Christine were entered while Jodi was in bankruptcy and the automatic bankruptcy stay order was in force with respect to Jodi and her estate. Yonenaka and Trustee Yonenaka contend that while the automatic stay was in effect in favor of Jodi, the circuit court lacked jurisdiction to enter the order and judgment in favor of GECH and against Yonenaka and Trustee Yonenaka and, therefore, the order and judgment are jurisdictionally void. We disagree.

■ The automatic stay provisions of 11 U.S.C.S. § 362(a) (Supp.1998)[4] prohibit actions or proceedings "against the debtor or against property of the estate" of the debtor. In this case, they applied in favor of Jodi and Jodi's bankruptcy estate. They did not apply in favor of the bankruptcy debtor's (Jodi's) creditors (Yonenaka, Trustee Yonenaka) as debtors of the plaintiff (GECH). *See Kona Hawaiian Associates v. Federal Deposit Insurance Corporation*, 41 B.R. 191 (1984) ("the automatic stay protecting debtor cannot be extended to protect general partners of debtor from foreclosure"); *Commercial Fin., Ltd. v. American Resources, Ltd.*, 6 Haw.App. 667, 684, 737 P.2d 1120, 1131 (1987) ("[t]he Bankruptcy Code's protection of the bankrupt debtor does not extend to

accommodation indorsers of the bankrupt debtor's debts").

### B.

■ Yonenaka and Trustee Yonenaka contend that the HRCP Rule 54(b) certification of the judgment was an abuse of discretion because interrelated claims remained to be adjudicated. We disagree. There is no evidence that the claims remaining to be adjudicated are interrelated to the claim adjudicated. The Creative–Christine–Jodi PN2 and Mortgage in favor of Yonenaka and Trustee Yonenaka is a separate transaction.

■ Yonenaka and Trustee Yonenaka also contend that due to the bankruptcy stay in favor of Jodi, Yonenaka and Trustee Yonenaka had no opportunity to object to the HRCP Rule 54(b) certification. We disagree. The bankruptcy stay in favor of Jodi did not prevent Yonenaka and Trustee Yonenaka from objecting to the certification in the GECH case.

### C.

■ Yonenaka and Trustee Yonenaka contend that they were "fraudulently induced by [GECH's] representatives to join [their] coborrower in applying for the [Second Mortgage], but [their] new counsel was unable to amend [their] pleadings to challenge the underlying loan transaction itself since the federal bankruptcy stay was in effect[.]" We disagree. The bankruptcy stay in favor of Jodi did not prevent Yonenaka and Trustee Yonenaka from asserting this allegation in the circuit court.

---

**4.** 11 U.S.C.S. § 362 (Supp.1998) provides, in relevant part, as follows:

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, ... operates as a stay, applicable to all entities, of—

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

. . . .

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title[.]

## D.

Yonenaka and Trustee Yonenaka contend that a

> [HRCP] Rule 54(b) certification, as *final,* of a lender's claim for foreclosure, where the underlying transactional documents might still be subject to recission [sic], ... is a textbook example of the type of waste of judicial and litigation resources, correctable by this Court on appeal, that is everywhere proscribed; ... and is clearly unconscionable in circumstances where, as here, [Yonenaka] will lose her residence before her claims and defenses can be fully pled.

(Emphasis in the original.) This contention has no basis in the record. Nothing in the record suggests any valid legal basis for rescission of PN1 and Second Mortgage from Yonenaka/Trustee Yonenaka/Christine to GECH.

## E.

Yonenaka and Trustee Yonenaka contend that the record lacks the evidence required by HRCP Rule 56(e) to support the summary judgment. HRCP Rule 56(e) states, in relevant part, as follows:

> **Form of Affidavits; Further Testimony; Defense Required.** Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith.

Yonenaka and Trustee Yonenaka contend that "[t]here is no admissible evidence whatsoever in the record below supporting summary judgment."

■ In this case, the existence and terms of PN1 and the Mortgage are undisputed and copies of PN1 and the Mortgage were properly submitted to the court. PN1 stated that "[s]hould default be made in the payment of any installment when due, the entire sum shall, at the option of the holder of this Note, at once become due and payable without notice and demand." Thus, GECH was not required to notify Yonenaka and Trustee Yonenaka to cause PN1 to become due and payable. *See* 55 Am.Jur.2d *Mortgages* § 658 (1996).

If GECH submitted sufficient admissible evidence to establish a prima facie case of its right to foreclosure then, under HRCP Rule 56(e), Yonenaka and Trustee Yonenaka had the burden of showing a genuine issue of material fact as to defenses and affirmative defenses by presenting specific facts "by affidavits or as otherwise provided in [HRCP Rule 56(e).]"

■ Yonenaka and Trustee Yonenaka argue that *Pacific Concrete Fed. Credit Union v. Kauanoe,* 62 Haw. 334, 336–37, 614 P.2d 936, 938 (1980), and *Fuller v. Pacific Medical Collections, Inc.,* 78 Hawai'i 213, 223–24, 891 P.2d 300, 310–11 (App.1995), require "that a lender must place in evidence account general ledgers and cannot give mere opinion evidence, such as in affidavits in support of summary judgment motions, merely attesting to what the lender's records show[.]" We agree.

■ HRCP Rule 56

> requires that facts set forth in the affidavits be admissible in evidence. All papers referred to in the affidavits must also be attached and sworn to or certified. These requirements are mandatory. As we pointed out ... [,] mere statements in affidavits do not authenticate exhibits referred to unless these exhibits are sworn to or certified.

*Pacific Concrete Fed. Credit Union,* 62 Haw. at 336–37, 614 P.2d at 938.

> HRCP Rules 56(c) and (e) specify that the initial burden of production is to show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law by: (1) filing an affidavit (a) made on personal knowledge, (b) setting forth such facts as would be admissible in evidence, and (c) showing affirmatively that the affiant is competent to testify to the matters stated therein; and (2) attaching thereto or serving therewith sworn or certified copies of

all papers or parts thereof referred to in the affidavit.

*GE Capital Hawaii, Inc. v. Miguel,* 92 Hawai'i 236, 241, 990 P.2d 134, 139 (App.1999).

In *Federal Deposit Insurance Corp. v. Selaiden Builders, Inc.,* 973 F.2d 1249 (5th Cir.1992), one affiant stated that the statements in his affidavit were based on his review of the company's business records. Another affiant stated that the statements in her affidavit were within her personal knowledge as the custodian of the records. In holding that the affidavits met the requirements of Federal Rules of Civil Procedure Rule 56(e) (identical to HRCP Rule 56(e)), the United States Court of Appeals for the Fifth Circuit ruled that "based on the affiants' personal knowledge and on their positions [with the company], the affiant were competent to testify[.]" *Id.* at 1254 n. 12. We conclude that this holding is wrong.

 GECH offered Okumoto's affidavit as evidence of (a) default and (b) balance due. Yonenaka and Trustee Yonenaka contend that hearsay affidavits from GECH's officers included in summary judgment motion papers attesting to what they have learned from company records as the sole basis for proving default in loan payments does not satisfy the standards for admissible evidence required in this jurisdiction pursuant to HRCP Rule 56(e) and Hawai'i Rules of Evidence (HRE) Rule 802. The question is whether Okumoto's statements are inadmissible hearsay.[5] Okumoto stated in his affidavit that he:

> reviewed the records and files in [GECH]'s possession regarding this matter, which records and files are kept by [GECH] in the ordinary course of business under [Okumoto's] custody and control and based on the review has personal knowledge of and is competent to testify as to the matters stated in this Affidavit[.]

The relevant part of the relevant records and files in GECH's possession itemizing the relevant credits and debits are statements.

When these records and files are offered to prove the truth of their statements they are hearsay. When person A's testimony is based upon his or her knowledge acquired from a statement in a document or by person B, person A's testimony is hearsay. Thus, these records, files and statements are admissible only to the extent that they qualify under one or more of the exceptions listed in HRE Rules 803 or 804.

In relevant part, HRE Rule 803(b)(6) states that the combination of the following elements is an exception to the hearsay rule: a record of acts (a) made in the course of a regularly conducted activity, (b) made at or near the time of the acts, and (c) as shown by the testimony of the custodian or other qualified witness.

*GE Capital Hawaii, Inc., supra,* at 242, 990 P.2d at 140.

Okumoto's affidavit states that his knowledge was "based upon the review" of the relevant records and files in GECH's possession. Because Okumoto's knowledge was "based upon" the statements in the records and files in GECH's possession, his testimony of that knowledge is hearsay. Because there is no applicable hearsay exception, his testimony is inadmissible hearsay.

Our conclusion is supported by *Pacific Concrete Fed. Credit Union, supra.* In that case, the lender relied on a person's affidavit referring to a ledger not submitted in compliance with HRCP Rule 56(e). *See id.* at 337, 614 P.2d at 938. The Hawai'i Supreme Court ruled that (a) the circuit court should not have considered the information in the ledger because a copy of the ledger was not in evidence, and (b) the "[a]ffiant's testimony as to what was in the ledger was inadmissible hearsay[.]" *Id.* at 337 n. 5, 614 P.2d at 938 n. 5.

Finally, we come to the question whether in Hawai'i it is possible for the nonmovant to silently waive the requirements of HRCP Rule 56(e). In Hawai'i, is the failure to timely move to strike the parts of an affidavit

---

**5.** Hawai'i Rules of Evidence (HRE) Rule 802 states that "[h]earsay is not admissible except as provided by these rules, or by other rules prescribed by the [Hawai'i] supreme court, or by statute."

HRE Rule 801(3) defines "hearsay" as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."

that violate HRCP Rule 56(e) a waiver of the deficiency?

Assuming the answer is yes, Yonenaka and Trustee Yonenaka also contend that due to the bankruptcy stay, their counsel had no opportunity to object to the absence of such evidence. We disagree. The bankruptcy stay in favor of Jodi did not prevent Yonenaka and Trustee Yonenaka from objecting to GECH's motion for summary judgment against Yonenaka, Trustee Yonenaka, Christine, and Glendale FB.

In the federal Seventh Circuit, "[a] party must move to strike an affidavit that violates Rule 56(e); if he fails to do so, he will waive his objection and in the absence of 'a gross miscarriage of justice,' the court may consider the defective affidavit." *Federal Deposit Insurance Corp. v. Meyer,* 781 F.2d 1260, 1267 (7th Cir.1986) (quoting *Klingman v. Nat. Indem. Co.,* 317 F.2d 850, 854 (7th Cir.1963)). This precedent conforms to the following statement of the prevailing rule:

A party must move to strike an affidavit that violates Rule 56(e). The failure to do so will result in the waiver of the objection and, in the absence of "a gross miscarriage of justice," the court may consider the defective affidavit. This principle applies to affidavits containing evidence that would not be admissible at trial, as well as to affidavits that are defective in form. The motion to strike must be timely, but the rules do not prescribe a specific period within which it should be made so the decision on that question is left to the discretion of the trial judge. On the other hand, it is clear that a motion to strike presented for the first time on appeal comes too late.

The court will disregard only the inadmissible portions of a challenged affidavit and consider the rest of it. . . .

It follows that a motion to strike should specify the objectionable portions of the affidavit and the grounds for each objection. A motion asserting only a general challenge to an affidavit will be ineffective.

10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure: Civil 2d* § 2738 (1998) (citations omitted).

This precedent conforms to the duty imposed by HRE Rule 103, Chapter 626(a)(1), Hawai'i Revised Statutes (1993). HRE Rule 103 states, in relevant part, as follows:

(a) Effect of erroneous ruling. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and:

(1) Objection. In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context[.]

HRE Rule 103(a)(1) has been interpreted by Professor Bowman as follows:

. . . Rule 103(a)(1), which covers the situation where evidence is admitted at trial, requires a "specific" objection or motion to strike if the ground is "not apparent from the context." The opponent can run afoul of rule 103(a)(1) in [various] ways. A complete failure to object will waive the point. *Waiver will also occur when the trial objection, properly overruled, differs from that pressed on appeal.*

A. Bowman, Hawaii Rules of Evidence Manual 7–9 (1990) (citations omitted) (some brackets and ellipsis points in original and some added) (emphasis added). *See also Wallace,* 80 Hawai'i at 410, 910 P.2d at 723 (point of error waived where appellate challenge to testimony establishing weight of cocaine was premised on questioned accuracy of police scale, but trial objection had raised only relevance); *State v. Matias,* 57 Haw. 96, 101, 550 P.2d 900, 904 (1976) (("[T]here can be no doubt that the making of an objection upon a specific ground is a waiver of all other objections.") (Citation and internal quotation marks omitted.)).

*Tabieros v. Clark Equipment Co.,* 85 Hawai'i 336, 379 n. 29, 944 P.2d 1279 n. 29 (1997) (emphasis in original).

Notwithstanding the above, as noted by this court in *GE Capital Hawaii, Inc., supra,* Hawai'i does not follow this precedent

in summary judgment situations. In the case of *In re Hawaiian Flour Mills, Inc.*, 76 Hawai'i 1, 11, 868 P.2d 419, 429 (1994), the Hawai'i Supreme Court stated that "[t]hese statements are inadmissible hearsay and as such are of no value on summary judgment. HRCP 56(e) (1990) (opposing or supporting affidavits must set forth facts as would be admissible in evidence)." Thus, "[a]n affidavit consisting of inadmissible hearsay cannot serve as a basis for awarding or denying summary judgment." *Nakato v. Macharg*, 89 Hawai'i 79, 89, 969 P.2d 824, 834 (App. 1998) (citations omitted).

## CONCLUSION

Accordingly, we vacate the circuit court's July 10, 1998 (1) Findings of Fact; Conclusions of Law; Order Granting Plaintiff's Motion for Summary Judgment and for Interlocutory Decree of Foreclosure Against All Defendants; and (2) Judgment finalized in accord with the requirements of Hawai'i Rules of Civil Procedure Rule 54(b), and remand for further proceedings consistent with the law and this opinion.